DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| PACIFIC RENEWABLE ENERGY SOLUTIONS, INC.,<br><br>        Plaintiff,<br><br>vs.<br><br>SEDNA AIRE AMERICAS, LLC,<br>ENERGY SPECIALTY SOURCE, LLC,<br>ALLAN E. VERHONICH, DAVE R. HEIN, and<br>ROCK W. HENDERSON<br><br>        Defendants. | CIVIL CASE NO. 11-00019<br><br><br>**ORDER**<br>re Motion to Compel Arbitration, and<br>to Dismiss, or in the Alternative,<br>Stay Proceedings |

This matter is before the court on a Motion to Compel Arbitration, and to Dismiss, or in the Alternative, Stay Proceedings, filed by defendants Dave R. Hein and Rock W. Henderson.[1] *See* ECF No. 54. The matter was fully briefed by the parties, and having reviewed the pertinent pleadings and relevant case law, the court issues the following Order granting the motion to compel arbitration.

## I.    BACKGROUND FACTS

Pacific Renewable Energy Solutions, Inc. (the "Plaintiff") entered into an exclusive distributor agreement with defendant Sedna Aire Americas, LLC ("SAA") for air conditioners that were advertised to use significantly less electricity to cool than conventional air conditioners

---

[1] Defendants Hein and Henderson shall collectively be referred to as the "Defendants." On November 29, 2011, default judgment was entered against all defendants. *See* Default J., ECF No. 25. On December 13, 2011, the Defendants filed a Motion to Set Aside Clerk's Default, followed by the filing of a Motion to Set Aside Default Judgment on January 30, 2012. ECF Nos. 27 & 30. The court granted both motions on April 2, 2013. *See* ECF No. 52.

Pacific Renewable Energy Solutions, Inc. v. Sedna Aire Americas, LLC, *et al.*, Civil Case No. 11-00019
Order re Motion to Compel Arbitration, and to Dismiss, or in the Alternative, Stay Proceedings

page 2 of 12

through solar power. Compl. at ¶¶4 & 12-13, ECF No. 1. The Plaintiff alleged it was induced into expending monies in order to create and develop a new business in which SAA's air conditioning units would be the primary product. *Id.* at ¶14. According to the Plaintiff, it allegedly made several payments by and through its majority shareholder Western Sales Trading Company to SAA. *Id.* at ¶15. The Plaintiff further alleged it made additional payments to SAA, however, these payments were delivered to defendant Energy Specialty Source, LLC ("ESS") as a "beneficiary." *Id.* at ¶16. Among other things, the Plaintiff claimed (1) SAA delivered defective goods; (2) SAA's air conditioning units were not shipped as promised; and (3) the Plaintiff was induced to design a website for the new business venture and hire a marketing consultant. *Id.* at ¶¶11, 14 & 20. The Plaintiff further alleged that defendants Alan E. Verhonich, Rock W. Henderson and Dave R. Hein are members of SAA, while Defendants Henderson and Hein are allegedly members of ESS. *Id.* at ¶¶5 & 7.

On June 14, 2011, the Plaintiff commenced this diversity action.[2] *See* Compl., ECF No. 1. The Complaint alleged the following eight (8) claims:

- Count I: Breach of Contract against SAA and Verhonich;

- Count II: Breach of Express Warranty against SAA;

- Count III: Breach of Warranty of Merchantability and Fitness for a Particular Purpose against SAA;

- Count IV: Performance of Deceptive Trade Practices Under Guam's Deceptive Trade Practices-Consumer Protection Act against SAA;

- Count V: Intentional Misrepresentation against Verhonich, Hein and Henderson;

- Count VI: Negligent Misrepresentation against Verhonich, Hein, Henderson and SAA;

- Count VII: Unjust Enrichment, or in the Alternative, Constructive Fraud or Fraudulent Conveyance against Verhonich, Hein and Henderson; and

- Count VIII: Alter Ego and Piercing the Corporate Veil, against SAA, ESS, Verhonich, Hein and Henderson.

*Id.*

---

[2] The Plaintiff alleged that SAA and ESS are limited liability companies organized in the state of Florida, and that defendants Verhonich, Hein and Henderson are residents of Florida. *Id.* at ¶¶3, 6 & 8-10.

After the court set aside the clerk's entry of default and the default judgment against the Defendants, in lieu of answering the Complaint, the Defendants filed the instant Motion to Compel Arbitration, and to Dismiss, or in the Alternative, Stay Proceedings. *See* ECF No. 54. The motion has been fully briefed, and the court is prepared to rule on the matter without the need for a hearing.[3]

## II.    ANALYSIS

According to the Defendants, the agreement between the Plaintiff and SAA contains an arbitration clause which mandates that this action proceed to binding arbitration. The contract provision specifically states: "Except as otherwise provided below, any controversy or claim arising out of or relating to this Agreement shall be submitted to final and binding arbitration before and in accordance with, the rules of the International Chamber of Commerce in Paris, France." *See* Exclusive Distributor Agreement (the "Agreement") at ¶13.7(a), ECF No. 55-3. The Defendants thus request the court to give the arbitration provision its full force and effect by dismissing or staying this action and compelling the Plaintiff to participate in arbitration.

The Plaintiff does not dispute the existence of the arbitration clause in the Agreement. Instead, the Plaintiff raises several arguments regarding the Defendants' standing to compel arbitration and the validity of the arbitration provision. The court will address these arguments separately.

### A.  Arguments Regarding Standing to Compel Arbitration

The Plaintiff first asserts that Defendants lack standing to compel arbitration since they were not signatories to the Agreement. *See* Opp'n at 2-4, ECF No. 56. Here, the Complaint asserts that the Agreement between the Plaintiff and SAA was signed by Verhonich "on behalf of himself and SAA" and Thomas Tanaka on behalf of the Plaintiff. *See* Compl. at ¶12, ECF No. 1. A review of the Agreement itself confirms this. *See* Agreement, ECF No. 55-3 at 4.

Generally, only a party to an arbitration contract can enforce the terms of that contract. *See*

___

[3]    Oral argument was not requested by the parties, and even if such a hearing were requested, the court exercises its discretion to render a decision on the basis of the written materials on file. *See* LR 16.1(e) of the Local Rule of Practice for the District Court of Guam.

Pacific Renewable Energy Solutions, Inc. v. Sedna Aire Americas, LLC, *et al.*, Civil Case No. 11-00019
Order re  Motion to Compel Arbitration, and to Dismiss, or in the Alternative, Stay Proceedings

page 4 of 12

1　*Britton v. Co-op Banking Group*, 4 F.3d 742, 744 (9th Cir. 1993) ("The right to compel arbitration

2　stems from a contractual right," which generally "may not be invoked by one who is not a party to

3　the agreement and does not otherwise possess the right to compel arbitration.") (citation omitted).

4　Nevertheless, in certain circumstances, a nonsignatory to a contract may have standing to enforce

5　an arbitration provision, such as when the nonsignatory is a third party beneficiary or agent. *See*

6　*Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006).

7　　　　In this case, it is unclear whether the Defendants can be considered third party beneficiaries

8　to the Agreement.  According to the Complaint, defendants "Verhonich, Hein and Henderson . . .

9　each benefitted from the delivery of monies" made by the Plaintiff. *See* Compl. at ¶65, ECF No.

10　1.  The Complaint also asserts that "Verhonich, Hein, Henderson, and SAA benefit[ted] from the

11　negligent misrepresentations because they induced  Plaintiff . . . to deliver money to SAA." *Id.* at

12　¶71.  Additionally, the allegations in the Complaint appear to support the notion that the Defendants

13　were agents of SAA.  Specifically, in Count VIII, which raises an Alter Ego and Piercing the

14　Corporate Veil claim, the Plaintiff asserts that SAA and ESS "intermingle their asserts," "are

15　managed by their members without regard for limited liability company formalities," and neither

16　"sufficiently maintains a separate existence from Verhonich, Hein, and Henderson." *Id.* at ¶¶94-96.

17　The assertions in the Complaint are not dispositive of the matter, however, because the Agreement

18　is silent as to whether the Defendants are in fact third party beneficiaries or agents of SAA.  In fact,

19　in their Reply to the Plaintiff's Opposition, the Defendants maintain that they "did not receive any

20　monetary benefit of said" Agreement and deny having any financial stake or interest in SAA. *Reply*

21　*Br.* at 3, ECF No. 58.

22　　　　In their Reply Brief, the Defendants appear to argue that if they are a non-party to the

23　Agreement, then they should not be bound by the Agreement.  Because the Defendants are

24　proceeding *pro se* in this action, the court will construe the Defendants' assertions liberally and

25　assume they are raising an equitable estoppel claim.

26　　　　"Equitable estoppel precludes a party from claiming the benefits of a contract while

27　simultaneously attempting to avoid the burdens that contract imposes." *Comer*, 436 F.3d at 1101

28　(citation omitted).  In the arbitration context, the Ninth Circuit has recognized the equitable estoppel

1  doctrine has generated two lines of cases.

> Under the first of these lines, nonsignatories have been held to arbitration clauses
> where the nonsignatory knowingly exploits the agreement containing the arbitration
> clause despite having never signed the agreement. Under the second line of cases,
> signatories have been required to arbitrate claims brought by nonsignatories at the
> nonsignatory's insistence because of the close relationship between the entities
> involved.

*Id.* (internal quotations and citations omitted).

Because the Defendants as the nonsignatories are attempting to require the signatory
Plaintiff to arbitrate its claims, it is the second line of cases that is relevant here. The United States
Supreme Court in *Arthur Andersen LLP v. Carlisle* held that a litigant who is not a party to an
arbitration agreement may invoke arbitration under the Federal Arbitration Act (the "FAA") if
relevant state contract law allows the litigant to enforce the agreement. 556 U.S. 624, 632 (2009).
The court has been unable to find a Guam case that discusses the equitable estoppel doctrine in the
arbitration context, but the Supreme Court of Guam has recognized that "Guam's equitable estoppel
doctrine was adopted from the California Civil Procedure law," *Mobil Oil Guam, Inc. v. Lee*, 2004
Guam 9 ¶24, 2004 WL 1305314, *6 (June 10, 2004), and thus the court will look to California law
and cases for guidance.

Under California contract law,

> [w]here a nonsignatory seeks to enforce an arbitration clause, the doctrine of
> equitable estoppel applies in two circumstances: (1) when a signatory must rely on
> the terms of the written agreement in asserting its claims against the nonsignatory
> or the claims are "intimately founded in and intertwined with" the underlying
> contract, and (2) when the signatory alleges substantially interdependent and
> concerted misconduct by the nonsignatory and another signatory and "the allegations
> of interdependent misconduct are founded in or intimately connected with the
> obligations of the underlying agreement."

*Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128-29 (9th Cir. 2013) (internal citations omitted).

The Plaintiff's second argument against enforcement of the arbitration provision is that the
mere fact that this litigation relates to a contract is insufficient to compel the arbitration called for
in that contract. *See* Opp'n at 4-5, ECF No. 56. Applying the above-mentioned equitable estoppel
doctrine, the court disagrees with the Plaintiff's contention.

In this case, the court finds that the Plaintiff's claims against the Defendants are intimately

founded in and intertwined with the Agreement.  The Complaint asserts that the Plaintiff entered into the Agreement with SAA to be the exclusive distributor of the SAA air conditioning units in Guam and Micronesia.  Compl. at ¶¶12-13, ECF No. 1.  SAA purportedly developed these air conditioning units to use significantly less electricity to cool than conventional air conditioners through solar power. *Id.* at ¶4. The Agreement required the Plaintiff to "make an initial investment" of $60,000 to be credited toward future purchase orders and to "maintain in its warehouse at least fifty . . . pieces of equipment . . . at all times to ensure the continuous supply of the product in the territory."  Agreement at ¶1, ECF No. 55-1.  The Agreement required the Plaintiff to "commit[] to an annual sale of not less than $120,000." *Id.*  In relation to the Agreement, the Plaintiff made more than $197,000 in payments to SAA.  Compl. at ¶17, ECF No. 1.

    In Count V, the Plaintiff asserts that Verhonich and the Defendants knowingly misrepresented facts to the Plaintiff, including assertions that the SAA air conditioners used less power than traditional air conditioning units when in fact they knew the SAA products did not operate as alleged. *Id.* at ¶64(a).  Count V further asserts that the Plaintiff "relied on the misrepresentations by doing business with SAA and continuing to make payments to SAA even though SAA failed to perform under the Agreement" and that Verhonich and the Defendants benefitted from these misrepresentations. *Id.* at ¶¶65-66.

    Similarly, in Count VI, the Plaintiff asserts that Verhonich and the Defendants made assertions to the Plaintiff "regarding the quality and effectiveness of SAA [air conditioning units] . . . as well as to the capacity of SAA to provide products to" the Plaintiff. *Id.* at ¶69.  The Plaintiff asserts Verhonich and the Defendants were "negligent in ascertaining the truth of their statements" because "[h]ad any of them performed any tests on the SAA" units, they "would have found that their assertions regarding the qualities of their product were false" and they "should have known that SAA was incapable of performing as promised." *Id.* at ¶70.  The Plaintiff alleges Verhonich and the Defendants benefitted from the negligent misrepresentations which induced the Plaintiff to enter into business with SAA and continue making payments to SAA even though SAA failed to perform under the Agreement. *Id.* at ¶¶ 71-72.

    The court finds that the Plaintiff's claims in Counts V and VI rely upon the existence of the

Agreement and are intimately founded in and intertwined with the underlying Agreement obligations.

Furthermore, the court finds that the Plaintiff's claims in Counts V through VII against the Defendants allege substantially interdependent concerted collusion by the Defendants and another signatory, namely Verhonich, and that these allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying Agreement. Moreover, although Counts I through IV of the Complaint do not specifically assert claims against the Defendants, in Count VIII the Plaintiff asks ths this court to pierce the corporate veil and treat SAA and ESS as alter egos of each and alter egos of their respective members (*i.e.*, Verhonich and the Defendants). Compl. at ¶97, ECF No. 1.

Based on the allegations in the Complaint, the court finds that the doctrine of equitable estoppel is applicable here such that the Defendants have standing to compel arbitration although they are nonsignatories to the Agreement between the Plaintiff and SAA.

B.   Arguments Regarding Validity of the Arbitration Provision

Before the court addresses the Plaintiff's next arguments, it is important to first discuss general principles of the FAA.

The FAA governs the enforceability of arbitration agreements in contracts. *See* 9 U.S.C. § 1, *et seq.*; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24–26 (1991). The FAA reflects both a "liberal federal policy favoring arbitration agreements" and the "fundamental principle that arbitration is a matter of contract." *AT & T Mobility LLC v. Concepcion*, ___ U.S. ___, 131 S. Ct. 1740, 1745 (2011) (internal quotation marks and citations omitted); *see also  Kilgore v. Keybank, Nat'l Ass'n*, 718 F.3d 1052, 1057 (9th Cir. 2013) (*en banc*) ("The FAA was intended to overcome an anachronistic judicial hostility to agreements to arbitrate, which American courts had borrowed from English common law." (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 625 n. 14 (1985))) and *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) ("The [FAA] not only placed arbitration agreements on equal footing with other contracts, but established a federal policy in favor of arbitration, and a federal common law of arbitrability which preempts state law disfavoring arbitration.").

1     In determining whether to compel a party to arbitration, the court may not review the merits

2 of the dispute. Instead, the court's role is limited "to determining (1) whether a valid agreement to

3 arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox*

4 *v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (internal quotation marks and

5 citation omitted). If the answers to both these questions are yes, the court must compel arbitration.

6 *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

7     In determining the validity of an arbitration agreement, the court applies state law contract

8 principles. 9 U.S.C. § 2. Section 2 of the FAA provides that "[a] written provision in . . . a

9 contract evidencing a transaction involving commerce to settle by arbitration a controversy

10 thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable[.]" 9 U.S.C.

11 § 2. Section 2 also includes a savings clause that allows arbitration agreements to be invalidated

12 only "upon such grounds as exist at law or in equity for the revocation of *any* contract." *Id.*

13 (emphasis added). Thus, the FAA does not permit arbitration agreements to be declared

14 unenforceable by contract defenses "that apply only to arbitration or derive their meaning from the

15 fact that an agreement to arbitrate is at issue." *Concepcion*, 131 S. Ct. at 1746 (citation omitted).

16 As the Supreme Court's recent opinion in *Concepcion* makes clear, if a doctrine generally

17 applicable to contract enforceability such as unconscionability, is applied by a state in a fashion that

18 disfavors arbitration, then that rule interferes with arbitration and is preempted by the FAA. *Id.* at

19 1747–50 ("When state law prohibits outright the arbitration of a particular type of claim, the

20 analysis is straightforward: The conflicting rule is displaced by the FAA. . . . [A] court may not rely

21 on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement

22 would be unconscionable, for this would enable the court to effect what . . . the state legislature

23 cannot.") (internal quotation marks omitted). Thus, "[s]tates cannot require a procedure that is

24 inconsistent with the FAA, even if it is desirable for unrelated reasons." *Id.* at 1753; *see also*

25 *Coneff v. AT & T Corp.*, 673 F.3d 1155, 1159 (9th Cir. 2012).

26     In the present case, despite the court's finding that the Defendants may compel arbitration,

27 the Plaintiff raises two arguments concerning the validity of the arbitration provision in the

28 Agreement. First, the Plaintiff asserts that the arbitration provision is invalid under Guam law,

1   specifically Title 5, Guam Code Annotated, Section 32104, which provides in pertinent part:

> *An agreement to arbitrate constitutes an important waiver of the right of access to the courts*. Therefore, as to any agreement to arbitrate executed after the effective date of this chapter, *the agreement to arbitrate any matter arising out of the sale of goods or services* for any amount of consideration, or any matter or contingency arising therefrom, shall be treated as a waiver of rights under this chapter, *is not binding on any consumer unless* there is full compliance both with this section and with this chapter, *each party is represented by an attorney, and the agreement to arbitrate is signed by the attorneys representing each of the parties.*

5 GUAM CODE ANN. § 32104(c) (emphasis added).

The Plaintiff asserts that the Defendants have not shown that the Plaintiff has waived protections afforded it under Guam's Consumer Protection laws, especially since such waivers must be memorialized "by an express provision in a written contract signed by both the consumer and the consumer's attorney." 5 GUAM CODE ANN. § 32104(a)(3). The Plaintiff notes that the Agreement here does not contain a provision acknowledging that the Plaintiff is expressly waiving rights and protections afforded it under Guam law. *See* Opp'n at 6, ECF No. 56.

The court finds that these provisions of Guam law do not render the arbitration provision in the Agreement unenforceable. As noted above, the savings clause of Section 2 of the FAA "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 131 S. Ct. at 1744. The Ninth Circuit has described Section 2's preemption as follows:

> The FAA preserves generally-applicable contract defenses and thus allows for invalidation of arbitration agreements in limited circumstances – that is, if the clause would be unenforceable "upon such grounds as exist at law or in equity for the revocation of *any* contract." 9 U.S.C. § 2 (emphasis added). However, any other state law rule that purports to invalidate arbitration agreements is preempted because the [FAA] "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp v. Keating*, 465 U.S. 1, 10 (1984). In short, a state statute or judicial rule that applies only to arbitration agreements, and not to contracts generally, is preempted by the FAA[.] . . . The federal government's authority to preempt state laws invalidating arbitration agreements derives from the Supremacy Clause of the Constitution. U.S. Const. art. VI ("This Constitution, and the laws of the United States . . . shall be the supreme law of the land; and the judges in every State shall be bound thereby, any thing in the constitution or laws of any State to the contrary notwithstanding.").

*Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 956 (9th Cir. 2012).

1   To declare the arbitration provision at issue here unenforceable, the Plaintiff must assert a

2   generally applicable contract defense, such as fraud, duress, or unconscionability. *Concepcion*, 131

3   S. Ct. at 1744.  In this case, the Plaintiff asserts that the arbitration provision is not binding because

4   it violates Guam law, specifically, Section 32104(c).  Section 32104(c), however, is a local law that

5   applies only to arbitration agreements and not to contracts in general.  As such, the court finds that

6   Section 32104(c) is preempted by the FAA.

7   The Plaintiff's second argument is that the arbitration provision is void as against the public

8   interest. *See* Opp'n at 6, ECF No. 56.  The Plaintiff cites to Guam law which provides that "[a]ll

9   contract[s] which have for their object, directly or indirectly, to exempt anyone from responsibility

10  for his own fraud, or willful injury to the person or property of another, or violation of law, whether

11  willful or negligent, are against the policy of the law." 18 GUAM CODE ANN. § 88012.  The Plaintiff

12  contends that it has specifically alleged fraudulent conduct committed by the Defendants in Counts

13  IV, V, VII and VIII of the Complaint, and the Defendants "should not be allowed to shirk their

14  responsibility for the fraud they committed by availing themselves of . . . arbitration[.]" Opp'n at 6,

15  ECF No. 56.

16  The court finds no merit in the Plaintiff's argument.  The arbitration provision in the

17  Agreement does not exempt the Defendants from responsibility for the fraud they allegedly

18  perpetrated against the Plaintiff.  There is no attempt to avoid liability; rather, the Defendants are

19  simply seeking to enforce the arbitration provision agreed to by the Plaintiff.

20  As noted previously, the court may not review the merits of the dispute; the court's role is

21  limited to determining whether a valid agreement to arbitrate exists and, if so, whether the

22  agreement encompasses the dispute at issue. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119

23  (9th Cir. 2008).  The court has determined that a valid agreement to arbitrate exists and that the

24  Defendants may enforce said agreement.  Because the arbitration provision in the Agreement is

25  written broadly so as to include "any controversy or claim arising out of or relating to" the

26  Agreement, the court finds that the arbitration provision encompasses the claims asserted against

27  the Defendants.  "Generally, when examining an arbitration contract, 'the FAA establishes that, as

28  a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in

1  favor of arbitration . . . .'" *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011) (*quoting Moses H.*

2  *Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 at 24–25 (1983)).  In light of this strong

3  federal policy, enforcement of an arbitration agreement "should not be denied unless it can be said

4  with positive assurance that the arbitration clause is not susceptible of an interpretation that covers

5  the asserted dispute." *AT & T Technologies, Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986);

6  *see also United Food and Comm. Workers Union v. Geldin Meat Co.*, 13 F.3d 1365, 1368 (9th Cir.

7  1993) ("Doubts should be resolved in favor of coverage.").

8        Finally, the Plaintiff argues that this matter must remain with this court because there exists

9  a dispute that has arisen about the arbitration provision.  Opp'n at 7, ECF No. 56.  The Plaintiff

10  cites to various cases and contends that "where the claim is – as it is here – of fraud in the

11  inducement of the arbitration provisions, this is determined by the [c]ourt; and not the arbitrator."

12  *Id.*

13        Challenges to the validity of an arbitration agreement can be divided into two categories:

14  (1) challenges specific to the arbitration provision itself (*e.g.*, claims the arbitration provision

15  violates some aspect of state or federal law); or (2) challenges to the agreement as a whole, such

16  as assertions that there was fraud in the inducement or that the entire contract is void because of an

17  illegal provision.  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006).  Under

18  Section 4 of the FAA, federal courts may only adjudicate a challenge to the validity of the

19  arbitration clause *itself* and cannot adjudicate claims which challenge the validity of the contract

20  as a whole.  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967) (citing

21  15 U.S.C. § 4).  Thus, a challenge to an arbitration clause must not be the same general complaint

22  lodged against the entire contract, but must instead allege why the arbitration clause itself,

23  independent of the rest of the contract, is invalid.  *Id.* at 1000–01.  Nothing proffered by the Plaintiff

24  in its Complaint or Opposition Brief allege the Defendants' misrepresentations are related to the

25  arbitration clause specifically.  Rather, the Plaintiff's claims of fraud in the inducement applies to

26  the entire Agreement.  Accordingly, consideration of this argument by the court is improper.

27  ///

28  ///

Pacific Renewable Energy Solutions, Inc. v. Sedna Aire Americas, LLC, *et al.*, Civil Case No. 11-00019
Order re Motion to Compel Arbitration, and to Dismiss, or in the Alternative, Stay Proceedings

page 12 of 12

## III.   CONCLUSION

Based on the above analysis, the court finds that the Defendants have standing to compel arbitration although they were not signatories to the Agreement.   Further, the court finds the arbitration provision is valid and is broad enough to encompass the disputes at issue here. Therefore, the court grants the Motion to Compel Arbitration.   Furthermore, Section 3 of the FAA provides that a court "shall on application of one of the parties stay the trial of the action" "upon any issue referable to arbitration under an agreement in writing for such arbitration."  9 U.S.C. § 3. Accordingly, the court grants the alternative request to stay this action pending the arbitration proceedings.

Finally, since the Defendants prevailed on their Motion to Compel Arbitration, the court directs the Defendants to file a report with the court on January 2, 2015, and every three (3) months thereafter, advising it of the status of the arbitration proceedings.

IT IS SO ORDERED.



**/s/ Frances M. Tydingco-Gatewood**
**Chief Judge**
**Dated: Sep 30, 2014**